We will hear argument first this morning in Case 23-334, Department of State v. Munoz. Mr. Gannon. Mr. Chief Justice, and may it please the Court. Last fiscal year, the Department of State issued 11 million immigrant and nonimmigrant visas. It also refused 62,000 visa applications on the basis of one or more of the admissibility grounds in 8 U.S.C. 1182a, including applications from approximately 5,400 noncitizens seeking to live with their U.S. citizen spouses or fiancés. Under the doctrine of consular nonreviewability, a noncitizen outside the United States cannot obtain judicial review of a consular officer's denial of a visa. Congress has not provided for that form of review in the INA, and when it added new visa-related provisions in 2002, it reaffirmed that it was not providing an end run around that. Nor is an end run available when a U.S. citizen family member, here the noncitizen spouse, wants the noncitizen to be admitted into the United States. As the carry-against-din plurality concluded in 2015, that is not a liberty interest protected by the Due Process Clause, and the U.S. citizen is affected only indirectly by the government's action against the noncitizen. Thus, Respondent Munoz cannot challenge the denial of her husband's visa application any more than she could challenge a decision at the end of a removal proceeding that he will be removed from the United States, or at the end of a criminal trial that he would be sent to a prison far across the country. With respect to the second question presented, even assuming that Respondent Munoz has a sufficient constitutional interest to trigger any judicial review, the Court should at the very least hold that the State Department satisfied the Mandel Standard. The consular officer provided a facially legitimate and bona fide reason by citing a valid statutory ground of inadmissibility, the unlawful activity bar, just as Justice Kennedy's concurrence had found had been the case in Dinn, where the government cited the neighboring terrorist activities bar. I welcome the Court's questions. Just for clarification, assuming that Ms. Munoz does in fact have a liberty interest, would the consular non-reviewability preclude her winning here? We think that it would. And how would that work then? The only potential exception there would be if there were a constitutional right that this Court has recognized. That would be the only potential exception. We otherwise think that the point here of consular non-reviewability is that the person whose interest is directly at stake doesn't have a right to review. And a fortiori, it seems that somebody who is only indirectly affected by the government's decision in that proceeding also cannot challenge that. And so the second question presented, assuming that she has a constitutional interest, would be that we at least satisfy— Well, I understand that. I'm just trying to figure, without even getting to Dinn, whether or not reviewability, non-reviewability would preclude her having any recovery at all, whatsoever, that you wouldn't even have to get to Dinn. Well, the case has been litigated on the presumption that there would be an exception to consular non-reviewability if we were to lose on the first QP, and that's what Justice Kennedy's concurrence said in Dinn. I don't know what the cause of action is that she has in order to bring that. The Ninth Circuit has been assuming that there is one, I guess, under the Constitution. We think there is not one under the APA, and none of the courts of appeals has found that there is one there. And so we think that there still would be reasons to say that there isn't going to be any review, even in those circumstances. But at the least, we would satisfy Mandel. Counsel, the husband has no right of review. You're correct. And it's a judicially created exception of non-reviewability. So if we make an exception, it's us accepting something that's not statutory or constitutionally required. Her point is, whether it's her or her husband, they each should have a right to dispute whatever basis it was that formed your denial. And let's assume it was something as simple as misidentification. You thought he was John Doe, and you had a whole criminal record on John Doe. And he's not John Doe, he's John Smith. John Smith Doe, which is another person. So the reason she's asking for an explanation, and one that's required, is that she says, I have a right equal to the Mandel professors. They had a First Amendment right to invite a professor to come speak to them. I have an equal constitutional right to live with my husband if I can. The second question is, is that a liberty interest? And you say it's not, so let's take each of your points. As far back as 1888, this court said in Mayard that getting married is something more than a mere contract, which is your position in your brief, that it's only statutory rights or benefits. In 1923, this court described in one breath the right, quote, to marry, establish a home, and bring up children. And that right is one long recognized at common law as essential to the orderly pursuit of happiness by free men. That's our Meyer case. In Loving v. Virginia, we said marriage is fundamental. In United States v. Winchester, we said marriage is more than a routine classification for purposes of certain statutory benefits. So, and Obergefell, I'm not going to cite it, but it said something to that effect. So if I assume that there's a liberty interest that has to be protected by some sort of process, then the question is, what kind of process is enough? And in Mandel and in Kinn, we talked about the statutory, citing at least a statutory basis for exclusion. Here you're saying she's entitled to nothing. Why do we have to go that far? Why don't we just address, given all of our centuries of statements about marriage being something more? We don't disagree that marriage is an important right and that she has liberty interests that are implicated there. To step back to the beginning of your question, we think that the doctrine of consular non-reviewability is rooted in the political branch's plenary power to determine which non-citizens should be admitted to the country and what procedures are going to be used in order to make that determination. And so that's not just a judicial exception to general principles of reviewability. That's the background against which Congress enacted the INA. It provided for certain remedies in review and did not provide for this. But that's the second question. And so... No, you start your brief by telling us we're looking only at no constitutional right. Now you're pivoting and saying, yes, if there is some sort of interest, but the only procedure that you're entitled to is the one Congress gave us. And in Kin we said, that's right. You're entitled to the citation of... We're going to... I hope someone else will pick up the second part of this, which is that unlawful is different than terrorizing. So there may be a reason for more specificity in this case than that case. But my question is, why isn't that a separate question from the one that you've been arguing in your brief, that there is no constitutionally protected interest by the wife? Well, I think that that... Assuming there is a constitutionally protected interest, we think that Mandel sets the ceiling of what it would require. I said that separately. But in Din... But you started your argument with saying there's no constitutionally protected right. The constitutionally protected liberty interest that she has not asserted is a liberty interest in having her spouse admitted to the United States. And we think that they need to allege a liberty interest that's sufficiently specific and would need to be rooted in history and tradition. All right, I disagree. We think that in Din, even Justice Kennedy's concurring opinion didn't say that they were entitled to that information, the statutory citation. He said that assuming that there were constitutional liberty interests that were implicated, that was enough information. And... What confused me about the argument is how your frontline position is compatible with Mandel. In other words, if your frontline position is right, why does Mandel exist? But Mandel seems to suggest that there is some kind of reviewability. Yes, I... It's a very... Excuse me. It's a very limited reviewability, but there's something we ask for a legitimate and bona fide reason. And so doesn't that contradict your frontline primary position? No, for this reason, Justice Kagan, because even Mandel doesn't decide that. Mandel assumes that. Mandel did exactly what Justice Kennedy's concurring opinion did. It said, we're not going to decide whether this First Amendment interest is sufficient, because even if there was something there, this is enough information, and we're not going to look behind the government's... I take your point. It's one way to read Mandel. I think possibly not the best way, but it's one way to read it. Mandel is a little bit ambiguous on that point. But I think that that's a harder and harder argument to make after Trump v. Hawaii, which pretty clearly talks about Mandel as setting forth a very limited, but still existent way to review these decisions. To the extent that Trump v. Hawaii addressed this, it didn't address... It assumed without deciding that consular non-reviewability existed, and it said that it quoted with approval Justice Kennedy's approach indeed, and of saying that a statutory citation would be enough in this context. I think Trump v. Hawaii... I mean, Trump says it's enough. But Trump also suggests that that's the right inquiry. In other words, that we should undertake a Mandel inquiry, and then Trump v. Hawaii says, as Justice Kennedy said and did, that the statutory citation was sufficient. And we can go on to that question. But I was just sort of focusing on the first issue, which is the combination of Mandel and Trump, suggests that your first, most dramatic, strongest position is not the right one here, that we in fact have recognized a kind of judicial review, although a very limited one. I think you have engaged in limited judicial review in a handful of cases without saying that that was required, and there's still nobody who has identified what the cause of action is here or why this would be permissible. Every time the court says this, it says, well, even assuming you can get review, the government has said enough here. And so we do think we would satisfy that standard, and I'm happy to go on and talk about whether we satisfy the standard here, even though we're relying on a different statute, as Justice Sotomayor pointed out, than was at issue in Din. Well, I think the reason that... I don't know, but I can't ascribe reasons to prior courts, but they move fairly quickly to, well, let's assume something and then move on to it, and as long as it leads to the same result, they don't have to struggle with the far more difficult question. So why isn't that the way we should be looking at this, which is reflexively the court moves on to what might be an easier question from the point of view of the court in terms of the significance of the constitutional question. And so going on to the second question, how would you go about weighing, which may have shed some light on the first one, how would you go about weighing the interest in marriage with the interest in national security? That's like apples and giraffes. Well, I think the point of Mandel, if we're in the second question, is that you don't do weighing. That's exactly what the court said in Mandel, is that we are not balancing the strength of the government's interest against the constitutional right at issue. It says we're not going to test or look behind the reason or balance it. That's the last paragraph of Mandel, and I understand the temptation to say we should decide the easy question here because the government actually did give more information in this case, but that would still leave an entrenched circuit split on the first question presented. Several circuits have said there is no constitutional right in this interest, and there's not even Mandel review. Three circuits since Din have assumed the first question and went on to say that the government satisfied the Mandel standard as applied in those cases. The Ninth Circuit is the only circuit on the other side that's saying that there is a constitutional liberty interest here, and I do think that assuming that means that we're going to have to continue to litigate questions over what are the contexts in which there's a sufficient liberty interest. Is it a spouse? Is that enough? Is it a fiancé? Is that enough? If a parent and child, is that enough? Does it implicate something other than visa denials? We haven't seen a clean line for distinguishing between the circumstances here and the circumstances there, but if you're in QP2, my basic answer is that there's not balancing. It's just a question of whether it's a facially legitimate and bona fide reason. What is required by Mandel in your view, and what would be the problems from your view in requiring more of an explanation? Well, our basic position on the Mandel question here is that the statutory citation is good enough, as Justice Kennedy concluded and did, and we think that that's similar to what the professors were able to get in Mandel to the extent that there had to be a reason of some kind because otherwise it was just blanket discretion in the Attorney General to grant a waiver or not. In this context, there's additional information that is provided by the citation of the statutory grant of inadmissibility. Why don't you spell out, because I think it's helpful, what would be the problems from the government's perspective if more of an explanation were required than just the statutory citation? Well, one problem is that in cases that involve law enforcement and intelligence information as security-based denials like this arise, that there are sensitivities about being able to share that information. That is why Congress has expressly provided in 1182B that the State Department doesn't even have to give the statutory citation in those cases. Explain what sensitivities encompasses. Well, it encompasses the fact that we'd be sharing information that indicates what we might know about transnational criminal organizations' operations. They would be able to, in this case, they have said in their red brief that they want not just the statutory citation, which is, or even the identification of the fact that we think he was a member of MS-13. They want more than that. They want to know what he said or did that made the government believe that. And there is no court that doesn't... On this score, Mr. Cannon, though, the Ninth Circuit at least, I think, held, if I remember correctly, that the explanation that you did give later was sufficient. It just wasn't timely. And what the government did give, if that were sufficient, obviously redacted lots of stuff, didn't provide a lot of information. You could simply say we think he's a member of a gang based on our contacts with law enforcement, period. So how would that implicate any serious governmental interest? Well, it would go beyond any of the court's previous cases and beyond what is often given in cases like that, beyond what Congress requires in cases involving denials under H-2 and H-3. No, of course it is, but you're asking what due process a Mandel may require. And if the Ninth Circuit says it requires more than a statutory cite, but less than revealing your intelligence, a sentence would do, which is what they said. Do you have any objection to that? Is that wrong? We do think that the statutory citation ought to be enough for the reasons explained in Justice Kennedy's opinion in Din. But that was a different statute. It's a totally different statute. I mean, the statute in Din had the kinds of sentences that I think Justice Gorsuch is talking about in it with relation to terrorist activities. It didn't just say terrorist activities, period. When you identified a subsection, you were into something of a factual basis for that determination. But that's not happening here. It would be true if we had identified particular subsections of the terrorist activities bar, but in Din we just cited the entire terrorist activities bar. But there were six discreet terrorist acts described. Here, the statute says only any other unlawful activity. It is a generalist catch-all for, quote, security and related grounds. In your brief on page 3-4, you seem to agree that your ground has to be tied to security in some form, but we don't know security at all, meaning the way it's written, you could say no based on someone's jaywalking conviction or for stealing a piece of bread when they were five years old from a store. I mean, there are some countries that do criminalize even children acting. So how does a citation to unlawful activity tell anybody anything? Here and in the D.C. Circuit case, you at least said we think he's a member of this organization, of this criminal organization. That tells you something. That tells you more. I agree with that. We have not applied the statute in context involving jaywalking, and this wouldn't cover the fact that somebody had previously committed a criminal offense. It requires us to have a reasonable ground to believe that the person will be committing unlawful activity once they are in the United States, and so that is why gang membership has been considered an indicator for this since 1965. Right, but I think the point, Mr. Gannon, is that the idea of we think you will commit some kind of criminal activity does not tell a person anything. Whereas we think you're an MS-13 member does tell a person something. Now they'll say, well, if I'm not an MS-13 member or if the spouse isn't, I know how to go about trying to contest that finding. So there's a big difference between both are a single sentence, but one sentence gives you a lever to try to contest an inaccuracy in what the government is doing, and the other gives you no lever at all. I understand that point, Justice Kagan, but I don't think that's the point of Mandel review. The point of Mandel review is not to flyspeck the agency's reasons and help the agency do a better job of getting to the right answer. The point of Mandel is to confirm that the government had a reason, and it was facially legitimate and bona fide, and so it's a spot check, and this is why there's not an indicator. How does unlawful activity, we think you committed unlawful activity, do that? We think you are going to commit unlawful activity. How does, if that's the point of Mandel, how does the kind of statement that you would be giving by just pointing to that one section fulfill that goal? Because it indicates that we are invoking a legitimate basis for inadmissibility that is in the statute, and the fact that we've identified it At this point, we've jumped over several preliminary questions. Before your time is up, could you say a little bit more about them? For one thing, do you think that the respondent has a cause of action, and if so, where does it come from? I don't know where it comes from, Justice Alito. The complaint seems to assume that there's probably a constitutional cause of action. They think it's an ex parte young cause of action? I think that that's their reasoning. The Ninth Circuit has obviously countenanced that, and so it hasn't been previously explored in this case. We don't think that they also assert an APA claim. We think that we have good arguments that the APA does not provide a cause of action here, that this is accepted from judicial review in two different rationales that are explained in decisions that we cite in the reply brief in the D.C. Circuit, the Ninth Circuit, and the Sixth Circuit. And so I don't know where the cause of action is unless it is an implicit ex parte young-like action that they're asking for a declaratory document. Well, I'll ask your friend about that. If there was a protected liberty interest in Mandel, wouldn't it follow sort of a fortiori that there's a protected liberty interest here? If the respondent had not said, I want to live with my husband in the United States, but had said, he has a lot of interesting things to say, and so I wish he were here so I could listen to what he has to say and therefore exercise my First Amendment right to receive information, would that be sufficient? I don't think so. I don't think that the marriage cases can be repleted as First Amendment cases and satisfy Mandel. Again, I would say that Mandel didn't even say that there is a constitutional right there. And here we think that the point of this is that we cite O'Bannon for the premise that in the due process context, an enforcement action that is taken against one person doesn't create a liberty interest in a third party who is indirectly affected by that. So she is obviously affected by the decision that her husband can't come into the United States. The same thing would be true if this were a removal proceeding, removing him from the United States, and you wouldn't say she has a due process interest in intervening in that case and making arguments that he can't make or arguments that he can make. Either way, she doesn't have an independent due process interest there. Mr. Cannon, you did ultimately provide a lot of information to the respondent, and the Ninth Circuit didn't fault that. It found that you gave plenty of information at the end. It just said it wasn't timely, and therefore it remanded to the district court to conduct further proceedings. I'm not clear what those are, what that would look like, and I'm just curious what you understand you think would follow on remand, and if there's a suggestion here perhaps that there's no harm, no foul, because everybody knew exactly what was going on here. It appears that the respondent filed a petition for re-hearing based on an assumption that the denial was gang membership, for example. So there's a lot packed in there, but if you could help me with that. I don't think my friend would say that the Ninth Circuit correctly concluded that we provided enough information. I don't read the red brief as acknowledging that, and I'm not sure what the Ninth Circuit thinks is going to happen on remand. This is sort of terra incognita for the courts to say that giving that much information is enough, but nevertheless we want there to be a full-bore review. The Ninth Circuit seemed to suggest that there's going to be some type of independent judicial confirmation that the government was correct about its reasons. I think that goes far beyond anything that any other court has countenanced in the context of Mandel-type review. And so at the end of the day, we don't think that the district court would be able to order the issuance of a visa, and the complaint doesn't ask for anything other than a declaration that the reason that had been given before we provided the additional details about MS-13 was not legitimate and bona fide. Thank you, Counsel. Justice Thomas, anything further? Mr. Gannon, what does exactly does the doctrine of counselor non-reviewability do? We think that it prevents a non-citizen outside the United States from challenging a decision to deny a visa and also prevents a third party from attacking that decision. To the extent that there is an exception that the court wants to acknowledge, that would then get into whether there is a constitutional liberty interest, and that's the first QP here. But otherwise, it protects the political branch's ability to protect the nation's borders and decide who is going to be admitted to the United States without judicial oversight for cases involving foreign citizens who are outside the United States. So without more, it is simply a doctrine that prevents all judicial review of these decisions? Yes, all judicial review that Congress has not provided for. Justice Alito? Justice Sotomayor? I'm sorry to see the question. My way. She has a liberty interest in her marriage and having her husband visit. She doesn't have a liberty interest in having the visa granted, but she does have a liberty interest in knowing why and an opportunity to oppose it if there is an opposition that can be had. But the review would be very limited. In Dinn, we said the process due is just knowing the reason. Had a statutory citation because she's entitled to know he was a terrorist. In a conviction, the husband has gotten full notice. All the grounds have been told to the wife because there's been a public adjudication of that ground. Similarly, with all the other examples you provide, full process has been provided. But what you're saying is I have a right and judicially created we're going to say there is no process whatsoever you're entitled to. Now you're saying you're entitled to what Congress permits you to have. And so the question is, what's that? In this context, that's not even Mandel. Congress has specifically said that we don't have to give a reason at all if this is the reason for the denial. But I would say that we don't think that there is a separate category of liberty interest for getting information as opposed to the underlying liberty interest. And so the fact that she wants to live with her husband in the United States doesn't mean that she has a liberty interest in having information related to something that prevents him from doing that. And I would also say... Pardon? But she doesn't have a constitutional right to participate in that proceeding and say you got this decision wrong. And that is not unusual that there are instances where nobody is able to get review, as Justice Kennedy's concurring opinion pointed out. We give the examples of the prisoner who was not able to challenge a transfer to a different prison, the soldier who was not able to challenge a military deployment. In Castle Rock, where the court relied on O'Bannon, that was an instance where nobody was able to get enforcement of that restraining order. You're not mentioning independent constitutional rights. All right, thank you. Thank you. Justice Kagan? I think I just want to understand the conversation that you had with Justice Alito before about the nature of the constitutional interest here versus in Mandel. So assume, for purposes of this question, that Mandel does require some kind of limited judicial review, in other words, this legitimate and bona fide state explanation, in the case where there is a constitutional right implicated, as there was in Mandel. And the question that I thought I heard Justice Alito asking was, if you assume that, why would this constitutional right be less important than the constitutional rights that was implicated in Mandel? In other words, the right of a few professors to listen to some guy for a few hours, why would that be more important than the right of a person to be able to live with their spouse in this country? And are you saying that it is? Or are you saying that once we think of Mandel in that way, yes, this constitutional right is just as important? Yeah, I don't think that we've tried to compare the constitutional rights in that regard. I think that we would say that Mandel hasn't decided the one, and therefore we're just making a separate argument about this liberty interest. If we assume that Mandel has decided the one, you would not contest that this constitutional right is any different. I would suggest that there could be a difference between First Amendment rights and the Due Process Clause and the third-party interests that are at stake in the Due Process Analysis under O'Bannon. But as I said to Justice Alito, I still don't think that that means that a spouse could come in and have a better claim because they want to talk in person with their spouse instead of over the telephone. She wouldn't need a better claim if you were willing to say, yes, the right of marriage and the burden that this place has on that right is just as important as the right of listening to a lecturer that was at issue in Mandel. And I think my basic answer to that, Justice Kagan, is the assumption of your question, which is that we think that Mandel didn't actually decide that, which is why it's open for the court to decide the first QP here. If it wants to assume that there's a liberty interest here that is equal to what the court assumed was at stake in Mandel and sort of assumed was at issue in Trump against Hawaii and therefore gave a very limited form of review, then you'd be doing Mandel analysis and we think that we would win. Okay, thank you. Justice Gorsuch? On one level, this is a very large case about fundamental liberty interests. On another level, I wonder if it's a small case. We talked about remedies a little bit a moment ago, you and I, and I'm just curious, what remedy does the plaintiff seek here? I know they wanted originally a declaration that there wasn't a bona fide reason seeming to take Mandel as given. I'm looking at page 13 in their complaint. But they got that. They got that reason. They got the Mandel reason. Then they want a declaration that the statute's unconstitutionally vague. That's not before us. Then they want their costs. That's not before us. I guess, of course, the usual catch-all grants such further relief. But if a district court can't order the husband into the country, what other relief remains that's available for a court to issue? We don't think there is any. I think that they've asked for a declaratory judgment that the reason that was given was not good enough. I think that now they would say that if this court said that the Ninth Circuit is wrong about what we did give, then they would be entitled to more, I guess, is what they would be saying on remand. How about this? The declaratory judgment would be you got the Mandel reason because that's what the Ninth Circuit found. It just wasn't timely. Period. Well, the court didn't grant review on the third QP. We think that the timeline analysis is wrong and we think it's particularly odd to say that this lawsuit needs to trundle off at this point. Would the government oppose a declaratory judgment that it wasn't timely in its Mandel statement? Well, I... Without knowing what the consequences of that are, I understand your point. And so I don't know what else they would get out of a declaration that it's untimely. The Ninth Circuit obviously wanted there to be further proceedings and they wanted there to be more information that was provided, and I understand my friend to be asking for more information even now. But you wouldn't know what... If the court's correct in the Ninth Circuit that they got all the information they were due, at least at the Mandel stage, and the Ninth Circuit's remanding to pierce that to conduct some sort of due process analysis about whether it was good enough, what could the Ninth Circuit or district court do at the end of that proceeding that would be lawful? We don't think anything, but I don't think that's a reason to affirm what the Ninth Circuit said here. I think that would be a reason to reverse and say that this case is... That's why I'm not fighting you. I'm just asking some questions. Yeah, and I agree with you that I don't know what the... I don't think there is anything that the court ought to be able to do on remand. Thank you. Justice Kavanaugh? Justice Barrett? So, Mr. Gannon, I had understood the government... This goes to the threshold question. I'd understood the government to essentially be asking us to take Justice Scalia's position in DIN, but based on some of your colloquies with my colleagues today, I'm thinking that maybe what the government's first-order position is, and I had not gotten this from the brief. I thought you just mentioned it in a footnote. It's to say that Mandel should never have assumed that there was an exception if there was a fundamental right implicated. Is that right? Well, I think that the point of Justice Kennedy's... I mean, Justice Scalia's plurality opinion in DIN would be that there wouldn't be an exception to consular nonreviewability that applied anyway. So I think it would get there one way or the other. No, I agree, but it's different. I mean, I think Justice Kagan called it a much more dramatic holding. It would be different. I guess I see you potentially asking us to do one of two things. One would be to say there's no fundamental right here. She doesn't have a fundamental right in having her spouse live with her in the United States, and so the Mandel exception isn't triggered and she's not entitled to anything. That is our front-line position. I agree. Okay. So you're not asking us to say, and by the way, people shouldn't have an opportunity to show that there's a fundamental right implicated because after all, Mandel had just assumed that it didn't say that you are entitled to get a Mandel explanation if you can point to the existence of a fundamental right. That's right, and I was saying for purposes of the assumption in Justice Kagan's question that if we assume that there is a constitutional liberty interest that is sufficient to trigger that review in Mandel, why isn't this one equally good? And our position is that this is not, as the plurality concluded in Kerry against Dinh, not a sufficient liberty interest to trigger any exception to consular nonreviewability that would look like Mandel review. So we think you don't get to Mandel review one way or the other. No, no, and I understand that, but I guess, and I'm still not quite sure what your position is. I understand that. I'm just asking you, are you asking us to say, to go still further than that and say, and by the way, Mandel just assumed that there would be an exception to consular nonreviewability if there was a fundamental right implicated, but we think there's no such exception at all. So not only is this one not good enough, are you asking us to do that? I don't think you need to do that. I think the question presented is based on the idea that there is the background of consular nonreviewability and the exception is not triggering for that reason. Okay, that is what I understood you to be asking from your brief, and I thought you were asking for more in the course of the argument. Okay, this goes to Justice Gorsuch's questions about what might happen, and this is something that I'll ask the other side as well, but what do you understand the further process to be? Because it doesn't do someone all that much good just to know what the reason was. As Justice Sotomayor was saying, if you think my husband is John Doe, but he's actually Jack Smith and has no ties to MS-13, the value of that information would be to have some opportunity to be heard about why it's wrong. But Mandel really is just about notice, and none of the court's cases, which really just kind of Mandel and Dinh, have gotten into what would happen after that. What is your understanding? Would they have to go back to the State Department, go back to the consular official? Is the idea that the district court would hear, have some opportunity to hear why this is wrong and why the tattoos didn't really show an MS-13 affiliation? They might contemplate that that's what they would be getting because they want the information that is what he said or what he did. We don't think that that's appropriate. I think that if the court were to say that I'm not sure what they think is going to happen with respect to that, they could refile a new application with the State Department. If they have this information, they will know this was the reason for the first denial, but that doesn't mean that the point of Mandel isn't actually notice. It's confirmation that the government had a reason. And so I'm still fighting the premise that the point of Mandel is to provide the person who is complaining with some form of redress. It's instead just a confirmation that the government had a legitimate reason to do what it did here. There are procedures within the State Department that there were multiple levels of review of this decision any time that there's a denial that has to be reviewed by a supervisor. This particular basis for inadmissibility needs to be based on an advisory opinion from Washington, D.C. And so there are lots of other ways in which the State Department can be asked to go back and improve this decision. We don't think that that should be done at the behest of judicial review and a court saying you have to do this and I want to see all of your evidence. Okay, so the government's position is that even if Mandel applies, once you point to a reason, whatever is required to make that reason sufficient, that would be kind of the end of it anyway. Yes, as Justice Gorsuch was just quoting from the prayer for relief in the complaint, it would be a declaration that that's not a good enough reason. And then you go on your way and if you want to try to go back to the State Department. If they want to refile, since they're past the time for reconsideration of this decision, they would have a judicial decision that says that that reason wasn't good enough on the basis of what was before the agency at the time. And it might come out differently the next time. But would there be some process in the State Department for letting them make their case that these tattoos, for example, didn't actually show an affiliation with MS-13? Or is it just like you file for reconsideration and the State Department says, okay, well, that wasn't good enough, but we still think, you know, and maybe just add a little bit more? I mean, they did provide that information to the State Department. The consul, the officers looked at that information and concluded that it didn't change their answer. I understand that. They weren't satisfied. Yeah. Okay. Thank you. Justice Jackson? So I'm a little trying to understand the government's argument about fundamental rights and the way in which Mandel works. In your colloquy with Justice Barrett, I think you said that there is not a fundamental right to have her spouse live with her in the United States, and that's the government's framing and the way in which you are approaching the first question. Am I wrong about that? I'd phrase it slightly different, that there is no liberty interest in getting your spouse admitted into the United States, notwithstanding immigration law restrictions. Yes, she has a liberty interest in living in the United States and in living with her spouse, but we don't think that that is a liberty interest that allows her to overcome immigration. No, I understand that, but I'm just trying to see how your argument maps on to what the court actually did in Mandel. And as I read that case, as I look at it, the first thing they're asking is whether these professors had some sort of right to receive information and ideas as protected under the First Amendment. They weren't saying, at the level that you're saying now, do they have a right to have this particular person, or do they have a liberty interest in having this individual come to the United States as their first question. It looks as though the way this opinion is structured, Justice Blackmun starts off by saying, in a variety of contexts, this court is referred to a First Amendment right to receive information and ideas, and he goes on and talks about that. And then he gets to the point that you're talking about when he says, recognition that First Amendment rights are implicated, however, is not dispositive of our inquiry. And then he goes on to do the rest of the inquiry. So I think the parallel structure here would be the recognition that there is, as we've said in so many cases, a fundamental right to marriage, to include cohabitation, to raising your family, those things exist. And that's implicated by the government's decision not to allow a person to come in, the spouse to come into the United States, and then you go on to determine whether or not, even though you have this right, that's implicated the other aspects of the test. What's wrong with thinking about it that way? Because I hear you shifting the fundamental right at the beginning in answer to the QP. Well, I think that's in part because this is a due process case and not a First Amendment case. And so the court is looking for liberty or property interests that is directly impinged by the government's action here. And O'Bannon tells us that the fact that it is directed at a third party is a distinction for due process purposes. There was no underlying interest in O'Bannon. Didn't we say there was no right to live in the nursing home of your choice? Whereas we have recognized the fundamental right to marriage and raising a family and that kind of thing. So I think O'Bannon might be a little bit off in that way. But I don't think that that analysis carries the day here because the court would never apply that analysis for purposes of the removal proceeding or any of the other proceedings here. The court would not say that she has a due process right to participate in her husband's removal proceeding because it might take him out of the country. And so the fact that there is this long tradition of no judicial review of these types of decisions about what noncitizens will be admitted into the country we think creates a high bar here. And that there needs to be a specific liberty interest that is directly affected. And we don't think that it's a liberty interest that's just in getting information or an explanation. We think it would be a liberty interest in actually having him in the United States. So is it your position that there isn't a liberty interest in it has to be more specific than the liberty interest in cohabitation with your spouse to begin with that would then trigger some sort of due process in this situation and whether or not the government is satisfied that is another question. Yes, ultimately the point here is that being able to live with your spouse in the United States is not the same thing as being able to get your spouse admitted to the United States. Okay. Thank you. Thank you, counsel. Mr. Lee. Mr. Chief Justice, and may it please the court, over eight years ago the government violated Sandra Munoz's right to procedural due process by denying her husband's visa without providing a reason why. Ms. Munoz has a constitutional liberty interest in living with her husband. We do not claim that this interest gives her the right to immigrate her husband regardless of his inadmissibility. But the importance of cohabitation to marriage means that the government is required to provide procedural protections when it burdens the underlying right. The statute also informs what process is required. There's nothing unusual about this. When government action burdens a substantive right, the court often relies on procedural protections to balance the implications of that burden against the government's countervailing interest. The statute likewise here shows why Ms. Munoz was herself deprived of that liberty interest and undermines the government's argument that she was a mere bystander. Under the INA, the citizen petitioner must initiate and advance her spouse's application from start to finish, and the very purpose of the consular process for spouses is to benefit the American citizen's spouse. Given this interest, judicial review is required. This court has repeatedly acknowledged that the constitutional rights of U.S. citizens can be implicated by visa denials, and when they are, that review is necessary. Procedural due process, therefore, requires notice sufficient to allow a meaningful opportunity to respond. A mere citation to a broad statute that encompasses any other unlawful activity forced Ms. Munoz to guess at the reason for the denial and provided only a mere gesture at due process, which this court said was insufficient in Malign. The information Ms. Munoz ultimately learned came after the one-year deadline to respond had passed and after the government had informed them that its inadmissibility finding was permanent. We now ask that Ms. Munoz be given the chance to respond to that information now, and I welcome the court's questions. Mr. Lee, I know others may want to talk about Mandel, but we confronted this liberty interest in Din, and I can't think of any decision from this court that said that such a liberty interest actually exists. Would you give your best account of how you get to this liberty interest? Yes, so there is a liberty interest in marital cohabitation which arises under the Constitution. This is something which the court has addressed on multiple occasions in the past. In Loving Against Virginia, for example, cohabitation was at the very heart of that case. That was a couple that was married in Washington, D.C., and the anti-miscegenation statute in the Commonwealth of Virginia prohibited them from living together as man and wife. The state court of appeals there said that... I understand that. That's a different case. What I'm interested in is we had this exact issue in Din. That would seem to have been the occasion for deciding exactly what you're talking about, but we did not get a court for that. I can think of no other case where the right to have your spouse immigrate to this country has been considered. That's what I'm interested in. I see. To clarify, that's not the procedural due process right that we're advancing. We do not claim that Ms. Munoz has a right to do what she wants, live with her husband in the U.S., even if her husband is inadmissible. We're merely asking for a reasonable and workable solution, which is that some basis for the denial be given so that we can correct the possibility that there was a mistake. I'm interested in the liberty interest that requires the procedural right, the underlying liberty interest that we could not find in Din. That's all I'm interested in. I see. And in a number of the other substantive due process cases, Meyer, for example, which acknowledged the substantive right to raise a family and establish a home, which certainly has a cohabitational element. In Smith v. The Foster Families Organization, the issue of the right to daily personal intimate association was recognized by this court as a substantive right. Even in the immigration context, Your Honor, at the peak of Chinese exclusion in the United States v. Gwai Lim, the court acknowledged, even without any statutory hook, that a non-citizen had the right to bring his wife to the country, even though she did not herself possess a certificate which was required at the time. So we think that that... None of those address the central issue, which is the consular non-reviewability, which sort of seems to me to be an entirely different order of magnitude than the cases that you cited. So, Your Honor, on the doctrine of consular non-reviewability, the government raises this as an exception when the rights of citizens are implicated. If a case where a U.S. citizen had been living with her husband for five years and that they had tried to go through the legal process and the denial was given without any reason of the basis why, that's the type of case that there has to be some level of review over. If the court acknowledged in Mandel, and I just want to quote from the decision in Trump v. Hawaii briefly, where the court said that this court has previously considered the merits of claims asserted by U.S. citizens regarding violations of their personal rights allegedly caused by the government's exclusion of particular foreign nationals, that's at 2416 of the opinion. We do not think that the court would be breaking any new ground by acknowledging that there is no doctrine of consular non-reviewability as applied to the implicated liberty interests of U.S. citizens, especially without... What more would you be entitled to than what you've gotten? I understand the question of the timeliness of the elaboration, but what else do you think you're entitled to? What we received, what the Ninth Circuit said was sufficient, is far better than any other unlawful activity, and so to answer your question... As you've said, what you've received. That's correct. After that one-year deadline had passed, that's at 22 CFR 48... So you think you're entitled to more just because the deadline had passed? No, but we think that we're entitled to a reasonable opportunity to respond to the allegation with enough information so that we're not trying to fight back with our hands tied behind our back. In court? Yeah, can't you... I'm sorry. No, if I may, because this certainly came up at the call with my friend. What happens in court then? You say reasonable opportunity contests, so you can force the government to provide more evidence behind the reasoning, or what happens? Well, no, Your Honor. What we think is the most appropriate way to proceed would be to take what the Department of Homeland Security applies in the domestic context, which is a general-level factual summary of the basis for the denial, excluding material that is sensitive for national security purposes. What that would do is it would mean... I don't think any party in this case wanted eight years of litigation. A rule like that would allow these cases to be determined at the agency level. Counsel, you've got that. I mean, the Ninth Circuit said that's exactly what you've got. So why are we here? Because what we're asking... I don't see anything in your prayer for relief or your causes of action, and I'm not sure what the cause of action here is either. I'm with Justice Alito on that. Maybe you can help me. But it seems from the prayer for relief, you've got everything you asked for. So let me try and clarify that, because what we are asking for now is the chance to go back to the consulate and try to overcome the denial with the information that we now have. So you're not asking for further judicial process? That's correct, Your Honor. Okay. So Mr. Gannon suggested you can go ahead and file a new application. And the problem with that is that at page 16 of the joint appendix, the government informed my clients that its determination, its false determination of Mr. Asensio Cordero's inadmissibility was permanent. So I do not think that without an order from a court saying that the basis for that denial was insufficient... So you want a declaratory judgment that it was insufficient? I don't think that there's a way around that, Your Honor, because otherwise we're going to be fighting an impossible battle of trying to disprove that Mr. Asensio Cordero, or rather trying to say that he is no longer a gang member, when that would require accepting this false premise in the first place. So just a second. I would like to know where in the record the government told you that it's permanent and you can't reapply, and I'd like to hear from Mr. Gannon about that. Yes, that is at page 16 of the joint appendix, Your Honor. That was far before we learned any of the additional factual material. Again, keep in mind that that came only three years after the denial and two years into litigation. And so my clients reasonably understood that the determination of inadmissibility became permanent. I believe it was in May of 2016. We still had seven months in the one-year deadline, which the government says in the regulations is an individual has the opportunity to overcome the denial. But that's meaningless, and it puts people in a Kafkaesque situation if the regulations say, well, sure, you have the opportunity to overcome the denial, but we're not going to tell you why. What do you do with Mandel and Trump v. Hawaii and Justice Kennedy's concurrence in Kerry v. Dinn, which suggested that you're not entitled to more information, this is what you're entitled to, and it's up to Congress if they want to provide more elaborate procedures or require more elaborate procedures in situations like this. Right. Well, there are many differences from Dinn, and in the colloquy with my friend previously there was discussion on some of the language differences. All three cases suggest that a facially legitimate bona fide reason is enough, and you stop there, and you don't go on. And that was elaborated on in Trump v. Hawaii that that's it. Courts will neither look behind the exercise of that discretion nor test it by balancing its justification against the asserted constitutional interest. That's kind of it for purposes of judicial. Right, and so I can get to some of the distinctions with Dinn and Justice Kennedy's concurrence, but I want to say first that the court has applied that facially legitimate and bona fide test in two types of situations unlike the situation here. The first is the Trump v. Hawaii type situation or the Mandel type where Congress has expressly granted to the executive branch a discretionary ability to deny or grant some benefit, or in the case of Fialo and Bell type situation where that was a substantive direct challenge to a broad congressional policy choice. Here the government claims as though it's operating at the peaks of plenary power, but the amicus brief from the congressman which was submitted says at page 23 that the department's position is that this decision should have been left to one political branch, the executive. The point I'm driving at, Your Honor, is that the Congress here has required that consular officers have a reason to believe an individual is inadmissible. The regulations refer to that as a standard which is akin to probable cause. So we think under a Matthews-Eldridge analysis, the risk of arbitrary deprivations along with the- Well, it seems to me that's what you're trying to do is replace Mandel and the Justice Kennedy concurrence and Trump v. Hawaii with a Matthews v. Eldridge test which would then in turn, as you would apply it, require substantially more process than our precedents have previously required. I'm not sure why we would do that. Well, don't get me wrong. We think we can prevail under the Facially Legitimate and Bonafide test as well. And if I can turn to that and the second part of Your Honor's question. Din, there were a number of important distinctions from here before I get to the statutory ones which the court touched on already. Number one, there was a factual basis in that case on the record. The fact that Ms. Din's husband was working for the Afghan government when the Taliban was in power. There was reference earlier to 1182B3 which the government treats as a broad nondisclosure provision. That is not the position that they took in Din v. Kerry where they said at page 50 and 51 of their merits brief that when the executive does disclose additional material, that reflects a considered determination that the information provided does not require invoking the protections of 1182B3. They did not invoke 1182B3 now at the time of the denial. And so we think that that militates for at least... Well, but that's an implicit weighing of the competing interests, right? I mean, you have to have that at some point given your claim. And I just want to know how you do that. How do you weigh the interest in cohabitation and marriage against the security values under consular non-reviewability? Sure, and I think the answer is more simple than the government lets on. Because the regulations which the Department of Homeland Security applies in the domestic context to the same exact statutory framework, the same grounds of inadmissibility, 8 CFR 103.2 says that an applicant shall be advised of the facts leading to denial. Well, I guess I do mean to interrupt. I mean, you say in the domestic context. That's kind of a pretty dramatic premise. If you're going to say, well, it's the same as it's going to be in the domestic context. The whole point of consular non-reviewability is that it's not in the domestic context. Well, but by the same token, Your Honor, it wouldn't make sense if these due process regulations apply in the domestic context to non-citizens, but they don't apply when a U.S. citizen's rights are implicated at the consular level. The amicus brief submitted by former DHS officials suggests that this is a reasonable, workable proposal. And they cite this provision, which I'd just like to quote briefly, which says that the applicant shall be advised of the facts and offered an opportunity to rebut the information and present information in his or her own behalf before the decision is rendered. Well, that seems to be flatly contrary to what, you know, the quote from Justice Frankfurter, which I don't remember. So that's something that's been in the body politic from the very beginning, that the United States has control over its borders with respect to non-citizens who seek to come in. But not, Your Honor, when the rights of a U.S. citizen are implicated. And the position that the government has put Ms. Munoz in is that she's been permanently separated from the man that she loves for eight years without having any basis, any chance, when there was an opportunity to respond under the regulations, to try and convince them that they made a mistake. Just to pause just very briefly, she's not been permanently separated from the man that she loves. That person is not allowed to be admitted into the United States. But at the same time, Your Honor, not entirely, Your Honor, because the government cannot dilute an American citizen's citizenship by giving them the chance to exercise their liberty interests only by forfeiting the protection of the Constitution. El Salvador is under martial law. The State Department warns American citizens not to travel there. And Ms. Munoz was born and raised in this country. She has a successful law practice here. Her father served in the U.S. Army in World War II in Germany. Mr. Levy, I guess I want you to assume a few things for me, and some of the assumptions you'll like and some of the assumptions you won't like. But I just want you to assume them, and then I'll ask my questions. So assume that you get Mandel review because you have a constitutionally protected liberty interest in cohabiting with a spouse. Assume that that review is limited and asks only for a bona fide and legitimate reason. Assume that the information that you got eventually, not in a timely way, but eventually, perfectly satisfies that demand for a bona fide legitimate reason. But you didn't get it in time, as I understand the issue. You didn't get it in time to invoke the reconsideration processes that the State Department usually has for exactly this purpose. Is that correct? That's correct, Your Honor. So if I think that the simple statement, he was an MS-13 member, is sufficient under Mandel, but you didn't get it in time to invoke the reconsideration process to say, no, you got that wrong, he wasn't an MS-13 member, what do we do now? Then I think the court would have to remand so that the individual could have an opportunity to try and prove to the consulate that they may have made a mistake. And there's a big, big difference between any other unlawful activity. You're saying that what we should do now, given that the information that satisfies Mandel was untimely, is essentially to tell everybody they should be put back in the box they were in before that information became untimely. Is that correct? In order to be able to harness the facts to overcome that determination. That's right, Your Honor. So the only relief you seek is the opportunity to file a motion for reconsideration at the consulate. Is that it? Yes, with the caveat that the government's inadmissibility determination would have to be declared to be incorrect. Now, if that's the case, I don't see that in your complaint, number one. And number two, what do we do with Judge Lee's observation that as a practical matter, it appears your client understood before the motion for reconsideration deadline passed that that was indeed the basis of the government's denial, that she understood that gang membership in MS-13 was the hang-up? Now, you didn't know all the details, but you did understand that fact. And if that fact alone sufficed to provide the Mandel notice, is this harmless error? No, and let me try and take the second part of Your Honor's question first. We actually, Ms. Munoz and Mr. Asensio-Cordero did not guess correctly. The government, at page 107 and 108 of the joint appendix below, the government said that the tattoos were merely the suspicion which triggered the inquiry. So there was no correct guess of the factual basis for the denial at all. I think that's slicing the baloney a little, Finley Counsel, because yes, you thought the tattoos were the basis, but you thought the tattoos were the basis because they suggested gang membership, which is exactly what the government thought too. But even there, there's a very significant difference between gang membership, there are hundreds of these gangs, and the specific gang that they ultimately provided three years later. Now, I'll be very concrete with how we would have done this differently if we'd have even known that bit of information. And a brief aside to say that I think if there was a- Does Mandel require the specificity of the particular gang that he was affiliated with? Wouldn't it be enough for the government to say he's affiliated with an international gang that conducts violence and drug trafficking operations, for example? It wouldn't be enough if there was additional facts that did not implicate national security, like the facts which were ultimately provided here, that it was based on a criminal review. Let's just suppose that it were enough. Then yes, that would be the end of the- End of the case, that would be harmless error then. Well, no, because again, it wasn't enough here, because there's no additional fact on the record that would have allowed Mr. Asencio Cordero and Ms. Munoz to have any idea how this man has never been convicted or charged of any crime. I understand that. I appreciate that fact. But if your client understood that gang membership was the problem, and if the government said gang membership, if that were enough to satisfy Mandel, why doesn't it follow that any error here is harmless? Well, to clarify, and I don't want to put too fine a point on it, but that would only be enough if the other- Indicating what gang he may belong to would implicate national security. In almost all cases, there's going to be- I don't know whether it would implicate national security. I'm positing it might satisfy Mandel. Well, I think based on the facts here, you would at the very least need the name of the gang. Let me come back to the point about what we would have done differently, because had we known MS-13 was the gang, at page 44 of the joint appendix, there's a declaration from a gang expert which was submitted in April 2016. That affidavit only mentions MS-13, I think, in two or three sentences in passing. It uses MS-13 as an example. It makes no attempt to actually analyze how these tattoos might have been related to that gang. I am not a gang expert, but when we go back on remand, we will be able to provide, this is Our Lady of Guadalupe, a tattoo of Sigmund Freud. I thought that was interesting. Maybe MS-13 doesn't like psychoanalysts. Going back to Justice Gorsuch's question here, I mean, Mandel doesn't require that much, and so you are, and this kind of goes to what Justice Kavanaugh was asking, you are asking for significantly more. If we think you don't get that much more under Mandel, I guess I don't see why Justice Gorsuch isn't right, that this is just game over. Well, let me answer that by coming back to Justice Kennedy's concurrence in Dinn, because that concurrence, and I'm operating under the assumption that we're working with Mandel here, that concurrence specified at page 105 that the terrorism bar contains discrete factual predicates. There were six or seven types of activity that there... But you know a gang here. Justice Gorsuch, the premise of his question was not just that you knew the general statute. I understand you think that's not enough. But he said, if you knew further, that it was because of international gang membership, membership in an international gang that conducts violence, and would likely conduct violence in the United States. Why isn't that enough? That's different than just the statutory citation. Because in almost all of these cases, Your Honor, there's going to be factual information, like DHS tells individuals in the domestic context, that can be provided without damaging national security. So, for example, the State Department lists in its foreign affairs manual the ten factors that officers are supposed to consider. Mr. Lee, can I take you back to the Chief Justice's question? And I don't think you can answer this question by referring to regulations. It's a constitutional question. And his question, as I understood it, and I had the same question, is how do you weigh the liberty interest that you are asserting against the government's interest in denying visas to people who would present a danger when they get to the United States? How do we weigh that? If Respondent's husband were a citizen, it wouldn't matter whether he was a member of MS-13 or any other gang, or whatever the government suspected him of being involved in criminal activities. She could live with him unless he were in prison. So it's a very, very extensive right. Now, you're translating it into the situation where it's the opportunity to come here. How do we figure out how much she gets? I think that has everything to do with the text of the statute that the government cites when they make that decision separating the couple. So in this case, as the Court knows, it was this very broad language. I will concede that the terrorism statute also has some broad language. Again, I don't think you can answer this constitutional question by citing statutes. You say there's a balancing. And you've got on one side a right that would be very, very weighty were they both U.S. citizens living in the United States. And then you're willing to dilute it so that it's only this big when the person wants to come into the United States. And I think the Court has addressed a similar context in the prison-type cases, VTEC against Jones, Harper against Washington, where the Court recognized an underlying substantive constitutional interest, for example, in not being forced to take psychotropic drugs or not being removed to a mental facility. And yet the way it balanced those interests was by providing a minimal level of procedural due process. And I think one of the points that is important to consider thematically here, Your Honor, is consular officers work very hard. They have very heavy caseloads. They're working under very difficult conditions. And what we're asking for is for them to give us enough information to help them make a decision that's going to foster the government's support. What if an American citizen wants to have a child who is a non-citizen admitted to the United States? Would the same thing apply there? Or an American citizen wants to have a non-citizen parent admitted? Or an American citizen who doesn't believe in marriage wants to have a non-citizen admitted to the United States so that person can live in an intimate relationship with that person in the United States? What about all those situations? So the only person that's going to have both the—and I want to take a half-step back in answering that and try and define the interest precisely as well. The only person who's going to have an interest directly deprived is going to be a spouse. You have to have both an underlying liberty interest, which we get from the Constitution, and you have to have a direct deprivation, which we get from the statute. It totally distinguishes the facts here from O'Bannon, where the home care patients had no statutory role to play whatsoever in the certification process, etc. So the point I'm trying to make is that—and the court understands that immigration law is quite complicated. I don't want to go on too long on this. But citizens can only petition immediate relatives, and citizens have to be adults to petition immediate relatives. So all those other floodgates concerns are exaggerated because the only person who's going to both be statutorily involved enough to have been directly deprived and have an underlying liberty interest in marital cohabitation— Well, do those people have a liberty interest? And if they do, then how can it be deprived by statute? How can it be taken away by statute? So, for example, a grandparent and a grandchild, they certainly would have an underlying liberty interest. That's from the Moore case. But they wouldn't be able to petition each other. So my point is that you have to have both these elements. And that's going to be my answer to all the floodgates concerns that Your Honor posits. Because you need to both—and there is no—the court has not recognized a substantive liberty interest in adult cohabitation. It's not a floodgates argument. It's a constitutional argument. It's how we determine which interests are sufficient to allow the American citizen to contest the denial of the visa for a close relative or a person with whom the person has a close relationship who's not an American citizen. Well, this is a case about marriage, Your Honor. And this is a case about the importance of marriage. And this court has recognized this. Congress for over 200 years has recognized this, even in the immigration context. 1804 was the first time immigration benefits passed through a citizenship. 1888, at the peak of Chinese exclusion, Congress passed the Scott Act, which exempted Chinese laborers who had wives in the United States. But, Mr. Lee, I guess what I'm not seeing—to me, there's no weighing at issue here. The way I understand the analysis as working is that if you come forward with a constitutional right, whether it's the right to listen to ideas from somebody overseas, or certainly whether it's the right to associate with your spouse who is overseas, if you come forward with a constitutional right of that kind in cohabiting or associating with a person who is not getting a visa, that gets you something, but it doesn't get you weighing. It gets you this very limited judicial review which says the government now has to say why it's excluding that person. So that's all it gets you. It's just like you come forward with a right, we don't weigh that right. It just gives you the ability to force the government to say one or two sentences about why they're excluding that person. So what weighing are we talking about? No, I think Your Honor put it better than I did. I mean, we have here a very important constitutional interest. It would certainly not make sense if Mr. Asensio Cordero could ask a professor to get his next visa and get in that way, but not because he had lived with his wife for five years. Right, but that brings us back to this question of, okay, you got what you wanted. You got the information that they were excluding the spouse because of gang activities. And then that brings us back to Justice Gorsuch's questions about why isn't this whole thing over because you got what you wanted. Because now for the first time we're going to have the opportunity to go back and harness the facts that's necessary to try and prove the government wrong. We don't have the right to win on remand. We'll go back to the consulate. We'll do our very best. There is a lot of information that we can do with the reasons that were ultimately given. It doesn't give us any guarantee, but that's what due process requires. But, Mandel, and this is just a question about the constitutional argument. This kind of goes back to the questions I was asking before. Mandel talks about notice and giving you the basis, but it doesn't talk about malign and an opportunity to be heard. And your weighing, I take it, is probably coming from Matthews versus Eldridge, which I don't think is the standard here. So where do we get the constitutional right to an opportunity to be heard in this Mandel context? Well, keep in mind that in Mandel there was a broad discretionary grant. We think that that's a foundational difference between Mandel and this case. And so because this is a nondiscretionary decision, which Congress has established officers must have this reason to believe, we think that that does a lot to get us to where we need to be, Your Honor. Thank you, Counsel. I understood you to indicate that what you thought the relief you were seeking was just limited judicial review. Is that right, or exactly what is the relief you're seeking? We do not need any additional judicial review here, Your Honor. I think on remand this will go quickly to the consulate so that we can finally respond to the information that we've been given. And how do you come to the fact or the conclusion that that is what you're entitled to? When you're discussing the right of a married couple to have one of them come in across the border, how do you get to the determination that that's what you're entitled to? Well, we get to it because Ms. Munoz is directly implicated, and that's where the statute comes in. So that gives her some sort of standing. But you said when you – I don't want to give it away – when you look at the marriage interest and the international interest of the United States, what you'd conclude is that you get this limited judicial review. I see. Yes, going forward. And you do that by doing what? Well, we do that by requiring that there is – I mean, we've had some discussion as to whether the facially legitimate and bona fide test applies or whether something slightly more strenuous applies. I don't know what the test is. What is it that the tests entail? The test is entailed at determining that the government did not make a decision which either has no basis in reality or which was violative of the rights of a U.S. citizen. Does it involve weighing the marriage interest and the international interest? Well, I think there's another government interest, which is in uniting American citizens with their spouses. Okay. Does it involve the weighing of that interest as well? Well, we don't see it that way, Your Honor. We see it as we have a marital interest and cohabitation in the United States. On the one hand, and? Well, and then the government's got to provide sufficient information. We acknowledge it's a low level of information. It's what DHS does domestically to ensure that the citizen at least had the opportunity to try and correct a mistake that the officer had. I take Your Honor's point. What is it? Well, we do not see it as a sort of explicit balancing issue. We see it as we have those. My point is that if you're going to take two competing interests and come to a conclusion about how the competition comes out, I don't see how you can avoid the conclusion that that involves weighing what I at least see as totally disparate and perhaps unweighable interests. Well, I don't mean to be hard-headed, Your Honor, but that's what this either facially legitimate and bona fide test or the slightly higher standard that we're asking for gets us. Because, again, we are certainly solicitous of the government's concern in keeping individuals who are inadmissible out of the United States, but individuals who are admissible should be admitted to the United States. Thank you. Thank you, Your Honor. Justice Thomas? Justice Alito? Well, I don't want to beat a dead horse, but I am going to beat it a little bit. Now, there are a number of possible answers, but there's a liberty interest. You say you're entitled to something, and that something could be, A, the State Department says we believe he's involved in criminal activity, B, we believe he's a member of a gang, C, we believe he's a member of a particular gang, D, we believe he's a member of MS-13, E, this is why we believe that he's a member of MS-13, F, if I'm getting my numbers straight, we believe that, and you have an opportunity to rebut it. Now, how do we determine which of those is what you get unless we're weighing one thing against another? By looking to what the Department of Homeland Security does domestically. Okay, thanks. I mean, that doesn't tell me anything about what the Constitution requires. One final question. Where does your cause of action come from? From the Due Process Clause of the Constitution. Is it an ex parte young cause of action? I mean, this issue hasn't been an issue below, so our cause of action arises under the Constitution, Your Honor. Directly under the Constitution. That's correct. It's not ex parte young? It arises from the Due Process Clause. It's not APA? We raised an APA claim below. If the Court wants to remand on that issue, they may, but we think it's a constitutional case, Your Honor. Okay, thank you. Justice Sotomayor? There are some of my colleagues who believe that the Constitution doesn't, on its face, provide a cause of action. We have a legion of cases suggesting that, and many of my colleagues taking that position. If they believe that, does ex parte young help you? Your Honor, I am not prepared to discuss ex parte young because this did not come up below. We think that our cause of action arises under the Constitution. We think it comes from 702 of the APA as well, which provides a different route, but that's our position. Justice Kagan? Questions? Justice Kavanaugh? So, just to follow up on, I think, Justice Alito's questions and others. If there's a liberty interest, then the Mandel standard applies. The Mandel standard was applied in Justice Kennedy's opinion in Kerry v. Ginn and also in Trump v. Hawaii. That requires a facially legitimate basis and a bona fide factual basis, right? Facially legitimate and bona fide. That's the question. And then the question becomes, what does that entail, I think? And Justice Kennedy says a number of things about that in Kerry v. Ginn. The government's citation of 1182A3B also indicates it relied on a bona fide factual basis and is also facially legitimate. It's on page 105. Then he says, Mandel instructs us not to look behind the government's exclusion for additional factual details beyond what its express reliance on 1182A3B encompassed. It goes on. The government furthermore was not required, as Ginn claims, to point to a more specific provision within 1182A3B, even though the statutory provision the consular office cited covers a broad range of conduct. And then says, notes that government's not prohibited from offering more, but the statute expressly refrains from requiring it to do so. Says Congress evaluated the benefits and burdens here and assigned discretion to the executive. And then concludes, I think, with the closer here that's problematic for you. Under Mandel, respect for the political branch's broad power over the creation and administration of the immigration system extends to determinations of how much information the government is obliged to disclose about a consular officer's denial of a visa to an alien abroad. So you put all that together, I think that's very problematic for you if we follow that. And that, in turn, was explicating what Mandel meant and what Trump v. Hawaii then relied on this opinion. So that's a problem for you, I think. So tell me why it's not. We don't think it's a problem for us, Your Honor, because of the distinctions here and with Ginn. So, number one, that was a case where the government had decided to invoke 1182B3. Justice Kennedy does refer to the reasons for the denial in that case. There was the Taliban fact. The government had there invoked B3. The plaintiffs in that case were required to make an as-applied substantive challenge to that statute. We don't have to do so here. But the main distinction, if I understand the line Your Honor is questioning, is the statutory text. And here I want to make a couple of points about the terrorism bar. Because not only does this draw a line around a distinct, finite range of activity that the officer must have found to have existed to have a reasonable reason to believe, pardon me. Also, there's language in there defining a terrorist organization, language defining terrorist activity, an intent requirement. And so we think that that's a lot more. That's your big distinction. But the problem for you is they wanted a more specific identification there. And he said, in that opinion, the government was not required to point to a more specific provision. Even though the statutory provision the counselor office recited covers a broad range of conduct. Which seems, I mean it's slicing it very thin then to say that's a distinction between that case and this case. I'll leave, well, give a brief response. The critical phrase in Justice Kennedy's analysis of the statute is that it contains discrete factual predicates. Any other unlawful activity is the text of this statute. There is no way to read that statute to have a discrete factual predicate. Thank you. Justice Barrett? Justice Jackson? So you're not here petitioning this court for any orders related to future hearings or anything else, right? Correct. I mean, you got the reasons in this case. But I thought we were here because it's the government's argument that they shouldn't have had to have given them, given the fact that Ms. Munoz, in the government's view, has no liberty interest and therefore no procedural due process rights. And those are the questions that we would be answering, not anything about how you would use this information that you now have to try to vindicate her rights in the consulate. Correct. All we're asking for is the chance. You're the respondent. The government has petitioned. And if we did nothing, you'd be fine, right? Because you didn't want us to take this case. Correct. All right. So let me ask you, do we need to roll back or change the doctrine of consular non-reviewability in order for you to win in this case? No, I think that the court's position in Trump against Hawaii gets us where we need to be on that. Why is that? Say a little bit more. Because the doctrine of consular non-reviewability does not apply to American citizens. The executive branch cannot restrict review without a statutory provision granting it the ability to strip review. This is not a case where Congress has gone anywhere near that. The citations which the government pulls up in its brief have not, do not. So we have never applied the doctrine of consular non-reviewability in the context of an American citizen? The court has always reviewed the merits of claims brought by American citizens, constitutional claims. That's correct, Your Honor. And any such review in this situation. So let's say we disagree with you on that. Let's say we disagree. The doctrine of consular non-reviewability applies, but it appears from Mandel that we have recognized an exception to it. Is that how you understand at least the government's secondary argument in this case? It's a pretty important exception from the standpoint of separation of powers, but yes, Your Honor. All right. So we're into Mandel, even if there is the doctrine of non-reviewability. And so why would you say that you win given the Mandel standard? I mean, they didn't win in that case. I'm sorry, Your Honor. Because here, unlike in Mandel, in that case the professor had violated a prior visa. The court held that there was a factual basis for the attorney general's denial of a fully discretionary waiver. Here you have a non-discretionary statute requiring reason to believe there's no factual basis for the denial, and therefore the government hasn't established that the denial was facially legitimate and bona fide. Final question. Would you be okay with an analysis that assumed the first question presented? If we were to prevail on the second question? No. I do think, honestly, that the court has to reach the first question in order to rule in favor of us. You think we have to say. We can't just assume it and then write because you can't assume it. I don't think it would be breaking any new ground to recognize the importance of marriage in this case, though, Your Honor. Thank you. Thank you. Thank you, counsel. Rebuttal, Mr. Gannon. Thank you, Mr. Chief Justice. If I could just make three points. First, I still haven't heard a clear explanation as to why this constitutional right, whether it's a procedural or a substantive one, should be limited to spouses or the effects on visas. My friend said that no one else other than a spouse would have the right to petition under the statute as it currently exists for this type of relief. But if this is a constitutional liberty interest underlying this, I'm not sure why people wouldn't be able to say the inability to make those petitions is unconstitutional. And so no court has countenanced that type of argument in any other context. Second, my friend talks about the domestic context, talks about what DHS does when there are proceedings in the United States, which obviously implicate different interests because somebody is here and there is a mechanism for some judicial review there. But it's important to recall here that state is the first line of defense on these issues. And if they deny a visa on the basis of somebody being inadmissible and that person doesn't come here, then there isn't going to be any judicial inquiry. If they deny a visa and that person does come here and DHS wants to remove that person, then the fact that they came here without a visa is an independent ground of inadmissibility. And so they'd be much more likely to be charged with that than the expectation that they would be engaged in unlawful activity while they are here in the United States. And third, if I could get to the colloquy with Justice Gorsuch, my friend talked about the determination that this ground of inadmissibility was permanent and cited page 16 of the Joint Appendix. The letter that is included there is one that simply said that this determination of inadmissibility is not waivable. There's not a procedure for getting us to consider whether we're going to make an exception the way DHS had done here on the ground of inadmissibility associated with his previous unlawful presence in the United States. That doesn't say that this is a permanent basis of inadmissibility. He can reapply for a visa and present whatever evidence he wants to persuade us that we were wrong the first time around, but that's not the same thing as saying that there is a judicially overseen procedure for rehearing that would allow the court to consider whether our reasons are correct. He said that he wants our inadmissibility finding to be declared incorrect, and so we would disagree that that's what any court should be doing on remand here. The point of Mandel is not to allow for meaningful opportunities to respond or further internal appeals or further judicial review. The court in Mandel was clear, Justice Kennedy's concurrence in Dinh was clear, that there's no testing or looking behind the court's decision. And my friend said that in Mandel the government showed that there was the fact that he had previously violated the terms of previous entries. That was a hotly contested issue in the case. The dissent said that that was a sham, and there was no evidence in the record to support it. The majority said we're not testing or looking behind the government's assertion. This is not about allowing courts to police whether the government's reasoning is correct. The consular officer has to have a reason to believe that this person is inadmissible in order to deny the visa, but that is not judicially reviewable. We urge the court to reverse the judgment of the Ninth Circuit. Thank you, Counsel. The case is submitted.